IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| GLENN A. PURKEYPYLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-5089-CV-SW-HFS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is a proceeding involving applications under Titles II and XVI of the Social Security Act (the Act). 42 U.S.C. §§ 401, et seq., and §§ 1381, et seq. Plaintiff Glenn A. Purkeypyle seeks review of the Commissioner's decision denying his applications for a period of disability and disability insurance benefits, and supplemental security income benefits. Plaintiff's applications were denied initially. Tr. 66-73. Plaintiff appealed the denial to an administrative law judge (ALJ). After an administrative hearing, the ALJ issued his written decision on August 26, 2004, in which he determined that plaintiff was not "disabled" as defined in the Act. Tr. 16-21. The Appeals Council of the Social Security Administration denied plaintiff's request for review on May 17, 2005. Tr. 6-8. Accordingly, the decision of the ALJ now stands as the final decision of the Commissioner. Plaintiff's appeal is currently before this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.     Factual Background**

The facts are fully presented in the parties' briefs and will thus be merely summarized here. On January 23, 2003, plaintiff filed an application for disability insurance benefits. Tr. 81-84. He also filed a protective application for supplemental security income on the same date. Tr. 393-95.

Plaintiff alleges a disability onset date of June 15, 2001, due to injuries to and pain in both of his elbows. Tr. 113.

Plaintiff's Testimony

Plaintiff was born on June 18, 1953 and was 50 years old at the time of the hearing. Tr. 81. He completed 11 years of school. Tr. 119; 357. He is single and lives alone; he has no income but does receive medical assistance. Tr. 43. Plaintiff has past relevant work experience as an over-the-road truck driver, a heavy dump truck driver, a delivery driver, a light truck driver, and a fabricator/welder. Tr. 43-45. He was working in the fabrication/welding job (in June 2001) when plate steel fell on his arms and injured both elbows. Tr. 45-46. He received a workers' compensation settlement. Tr. 46. He briefly tried to work after his injury at welding and construction, but was let go when the employer learned of his prior injury. Tr. 46. He has also tried to mow yards, last mowing a 2½-acre area with a riding mower in August 2003 for his landlord in exchange for rent. Tr. 47. About 2 months before the hearing, he helped remodel a trailer house for 2 days, cutting lumber and drilling holes. Tr. 47.

As a result of the work injury, plaintiff has had three surgeries on his right elbow. Tr. 48. He wears a brace on his right elbow when he drives for long distances. Tr. 49, 52. He has lumps and scar tissue on his right elbow. Tr. 49-50. His right elbow pain is constant but fluctuates, from dull to stretching pain, like his arm is dislocated; sometimes he has very sharp pain, and one sensitive area stays painful. Tr. 50. On a scale of 1 to 10, his pain is at least 1½ to 2 and at most 6; if his pain reached 7, he would go to the ER. Tr. 50. His elbow pain also radiates to his right hand, right wrist and sometimes to his shoulder. Tr. 51. He has carpal tunnel syndrome in his right wrist; a spur in that wrist makes a popping sound. Tr. 48-49. His right elbow pain is aggravated by

2

combing his hair, brushing his teeth, opening and closing doors, typing, writing and driving. Tr. 51. He soaks his right elbow in hot water to ease the pain. Tr. 51-52. Plaintiff also has "high-pitched," sharp pain in his left elbow, which is aggravated by grabbing, lifting, washing dishes and cleaning. Tr. 54-54. To relieve the pain, he soaks his left elbow in hot water and sometimes takes Excedrin or Tylenol. Tr. 55. In terms of prescription medications, he takes Emdur and Lodine regularly for pain. Tr. 53-54. He takes Trazadone to help him sleep, Toprol for high blood pressure, and Ranitidine for gastric reflux.[1] Tr. 52-53. He does not have negative side effects from his medications. Tr. 54.

Plaintiff drives about 5 miles a week to the grocery store and gas station. Tr. 56. He lives in a mobile home and prepares his own meals, does laundry and tries to mow his grass. Tr. 56-57. He rarely pursues his hobby of fishing and lasted fished in January 2004. Tr. 57. He does not have a social life; he stays a home, listens to the radio and has a small flower garden. Tr. 57.

## II.   Standard of Review

The scope of this court's review is defined by the Act, which provides that the Commissioner's decision is conclusive if supported by substantial evidence on the record as a whole. Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989); Bates v. Chater, 54 F.3d 529, 531 (8th Cir. 1995); Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995); Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The court will evaluate the entire record, considering not only the evidence which supports the Commissioner's decision, but also that which fairly detracts from

---

[1] Plaintiff does not claim that these conditions are part of his asserted disability.

3

it.  Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Johnson v. Shalala, 42 F.3d 448, 451 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).  The court will not, however, reverse a decision simply because substantial evidence may support the opposite conclusion. Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995).  The court must be satisfied that the ALJ performed his duty to fully and fairly evaluate all the evidence before him.  Herbert v. Heckler, 783 F.2d 128, 130-31 (8th Cir. 1986).

**III.  Analysis**

The Social Security Administration has established a five-step sequential evaluation process for determining disability.  20 C.F.R. §§ 404.1520, 416.920.  Step one requires a determination as to whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments as defined in 20 C.F.R. § 404.1520(c).  If so, the ALJ should proceed to step three, which asks if the impairment or combination of impairments meets or equals one of a list of specific impairments set out in the regulations.  20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is conclusively presumed disabled; if not, the ALJ should proceed to step four.  At step four, the ALJ determines whether the claimant can still perform "past relevant work."  20 C.F.R. § 404.1520(e).  If the claimant can perform such work, he is not disabled.  If the claimant establishes that he is incapable of performing his past relevant work, the ALJ must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy.  20 C.F.R. § 1520(f).

In this case, the ALJ proceeded through all five steps and concluded that plaintiff was not eligible for disability insurance benefits or supplemental security income under the Act.  He

4

determined that plaintiff has the following medically determinable physical impairments:

> a right elbow disorder with non severe tendonitis of the left elbow and non severe carpal tunnel syndrome in the right wrist

Tr. 17, 20. The ALJ concluded that these impairments, considered singularly or in combination, did not meet the criteria set forth in the Listing of Impairments. Tr. 17; see 20 C.F.R. § 404, Subpart P, App. 1. Based on the testimony of a vocational expert, the ALJ further found that plaintiff is unable to perform his past relevant work. Tr. 20, 21. The ALJ determined, however, that plaintiff possesses the residual functional capacity to perform other work which exists in significant numbers in the economy, and thus is not disabled. Tr. 20, 21.

Plaintiff raises three points of error. He claims that the ALJ: (1) improperly formulated plaintiff's residual functional capacity; (2) erred in crediting the vocational expert's testimony despite a contradiction between that testimony and the DOT descriptions of jobs that plaintiff allegedly has the residual functional capacity to perform; and (3) erred in finding that plaintiff's testimony was not credible.

### A. Formulation of Residual Functional Capacity

In this case, the ALJ formulated plaintiff's residual functional capacity (RFC) as follows: ability to perform a full range of light work where he can bend, sit, stand and walk without restriction but is limited to lifting a maximum of 20 lbs. occasionally and 10 pounds frequently; unlimited in his ability to reach with his left upper extremity, but can only occasionally reach with his right upper extremity if there is resistance and can only occasionally lift or push with the right upper extremity if there is resistance with movement of the arm; he cannot crawl. Tr. 19. Plaintiff argues that the ALJ did not consider the limitations resulting from plaintiff's left arm impairment in deriving the RFC; additionally, plaintiff argues that the ALJ did not provide medical evidence to

5

support the RFC and did not demonstrate a nexus between the medical evidence and the RFC.

As an initial matter, the court notes the ALJ appears to have erred even earlier, at step two in the sequential analysis, by concluding that plaintiff's tendonitis of the left elbow was not a medically severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The phrase "basic work activities" means "the abilities and aptitudes necessary to do most jobs," including physical functions such as pushing, pulling, reaching, carrying and handling. 20 C.F.R. § 404.1521(b). "An impairment can be considered 'non-severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Shafer v. Apfel, 2000 WL 33146935, at *10 (D. Kan. 2000) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987)).

Here, the record evidence demonstrates that plaintiff's left arm impairment is more than a "slight abnormality" and places key limitations on his physical ability to do work activities. As the medical records demonstrate, both of plaintiff's elbows were injured when the plate metal fell on them in June 2001. While the right elbow ultimately required multiple surgeries and the left elbow did not, there is no sound basis from which to discount the left elbow impairment as "non-severe," especially in light of the persistent and enduring nature of impairment.

On July 11, 2001, nearly a month after the injury, treating physician Dr. James T. Shaeffer diagnosed plaintiff with pain and swelling on the lateral side of the left arm. Tr. 282. Dr. Shaeffer injected plaintiff's elbow with Depo-Medrol, a corticosteroid used for pain relief, and Xylocaine. Tr. 282. Plaintiff's pain and functional difficulties with his left elbow continued. More than two

6

years later, on March 21, 2003, treating physician Dr. Kendel L. Klein noted that plaintiff reported that his left elbow had bothered him since the 2001 injury, that the pain was mostly over the lateral aspect of the left elbow, and that he had problems gripping and holding things in his hand. Tr. 391. Upon examination, Dr. Klein observed tenderness over the lateral epicondyle, which was exacerbated by resistance testing of pronation and supination and bothered him more when trying to place his hand in supination against resistance. Tr. 391. Dr. Klein diagnosed plaintiff with chronic left elbow pain with evidence of lateral epicondylitis,[2] and prescribed Lodine XL 400 for the pain. Tr. 391. At a follow-up visit on April 22, 2003, plaintiff reported still having left elbow pain, taking Lodine off and on, and not noticing much change. Tr. 390. Dr. Klein noted localized tenderness over the lateral epicondyle and prescribed another pain medication, Anaprox DS. Tr. 390. At another follow-up visit on May 23, 2003, Dr. Klein noted that plaintiff continued to experience arm pain. Tr. 389. In short, the record medical evidence strongly supports a finding that plaintiff's left arm impairment is more than a "slight abnormality" and would no doubt interfere with his ability to do basic work activities involving the arms, including functions such as reaching, lifting, pushing and pulling. Therefore, the ALJ's characterization plaintiff's left elbow impairment as "non-severe" was in error because it was not supported by substantial evidence on the record as a whole. On remand, the ALJ should reconsider the characterization and severity of this impairment.

    Even if the ALJ had been correct in finding that the left elbow impairment was "non-severe,"

---

[2]Epicondyle is defined as an eminence upon a bone, above its condyle, which is a rounded projection of the bone. Epicondylitis, a tendon-related condition, is defined as inflammation of the epicondyle or of the tissues adjoining the epicondyle of the humerus. Dorland's Illustrated Medical Dictionary (25th ed.).

7

the court finds that the ALJ erred by failing to consider the limitations posed by the left elbow impairment when formulating the RFC. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" Social Security Ruling 96-8p, 1997 WL 374184, at *5 (emphasis added). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p at *5.

Although the ALJ identified tendonitis of the left elbow as one of plaintiff's medically determinable physical impairments, he did not take into account the limitations or restrictions of that impairment when formulating the RFC. On the contrary, the RFC states that plaintiff is "unlimited in his ability to reach with his left upper extremity." Tr. 19. The ALJ's decision states that the RFC was supported by "the assessments of Dr. Swango, and the results of the functional capacity evaluation." Tr. 19. After reviewing Dr. Swango's records and the functional capacity evaluation (FCE), it appears that the ALJ relied almost entirely on the FCE, which was completed by Nancy Dickey, an occupational therapist. Tr. 288-90. Ms. Dickey is not a medical doctor, so the ALJ's heavy reliance her report is misplaced.

Moreover, the court notes that Dr. Swango's records conclude on August 19, 2002, and Ms. Dickey's FCE was completed on June 5, 2002. However, as outlined above, a significant portion of plaintiff's treatment and diagnoses for the left elbow impairment occurred in 2003. Critically, it was not until March 21, 2003 that treating physician Dr. Klein diagnosed plaintiff with chronic left elbow pain with evidence of lateral epicondylitis. Tr. 391. Plaintiff was then treated for months with various medications for pain stemming from the left elbow problem. The ALJ's decision does

8

not even mention Dr. Klein's records, diagnoses or opinions at all. As a general rule, a treating physician's opinion should be given substantial weight. Prince v. Bowen, 894 F.3d 283, 285 (8th Cir. 1990). And because Dr. Klein's records were closer in time to the April 2004 hearing, the ALJ's failure to expressly consider them is all the more disconcerting.[3] In light of Dr. Klein's records and diagnoses documenting a serious left elbow impairment (and the notable absence of any records indicating that the problem had resolved), the RFC should have reflected at least some limitations and restrictions in plaintiff's use of his left upper extremity. This is especially true given the court's earlier finding that the ALJ erred in characterizing the left elbow impairment as non-severe. Thus, the court finds that the ALJ's failure to include any limitations or restrictions in the RFC based on plaintiff's left elbow impairment (or to provide some rationale for not doing so in the face of Dr. Klein's records and diagnoses) was in error and was not supported by substantial evidence on the records as a whole. On remand, the ALJ should reconsider the formulation of the RFC in light of plaintiff's left elbow impairment.[4]

### B. Other Points of Error

Plaintiff also argues that the ALJ erred in crediting the vocational expert's testimony despite a contradiction between that testimony and the DOT descriptions of jobs that plaintiff allegedly had the RFC to perform, and also erred in finding that plaintiff's testimony was not credible. Because the ALJ's formulation of plaintiff's RFC is in error, the hypothetical posed to the vocational expert

---

[3] If the ALJ had some reason for discounting or disregarding Dr. Klein's 2003 diagnoses concerning the left elbow impairment, it should have appeared in the decision.

[4] The court notes that the ALJ also identified non-severe carpal tunnel syndrome of the right wrist as one of plaintiff's medically determinable physical impairments. The record contains little if any evidence of pain or functional limitations posed by this condition, so the court finds no error in the ALJ not including hand- or wrist-related restrictions in the RFC.

9

is also in doubt, as are the expert's resulting opinions as to what jobs plaintiff is able to perform. Therefore, the court does not reach the argument about the conflict between the vocational expert testimony and the DOT descriptions.

On remand, the ALJ is directed to reconsider the severity of plaintiff's left elbow impairment and to reconsider the formulation of the RFC in light of that impairment. Given the additional time afforded by remand, the ALJ should more fully develop the record on the left elbow impairment issue by requesting updated medical records from Dr. Klein and any other treating physicians who have recently assessed the left elbow impairment, and if practical, by specifically eliciting those treating physicians' opinions as to the limitations and restrictions posed by that impairment.

To avoid the vocational expert testimony/DOT description conflict from recurring, when eliciting a vocational expert's testimony as to jobs that a person with plaintiff's RFC could perform, the ALJ should specifically inquire as to each job about the frequency of reaching, handling, feeling and other functions affected by plaintiff's right and left elbow impairments. Lastly, because plaintiff will again be providing testimony, the ALJ should reconsider the credibility of his testimony.

**IV.    Conclusion**

Based on the foregoing discussion, it is hereby

10

Case 3:05-cv-05089-HFS   Document 12   Filed 08/11/06   Page 10 of 11

ORDERED that plaintiff's motion for summary judgment (ECF doc. 7) is GRANTED. The decision of the Commissioner is reversed and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this order. The clerk is directed to enter judgment for plaintiff and against defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

August 11, 2006

Kansas City, Missouri